FILED

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

2018 MAY -4  AM 11: 44

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | |
|---|---|
| UNITED STATES *ex rel.* ERMA LEE    ) | Case No. |
| ) | |
| ) | |
| Plaintiffs,    ) | |
| ) | **A18CV0376 LY** |
| ) | |
| v.    ) | |
| ) | |
| TARRANT COUNTY HOSPITAL    ) | **DEMAND FOR JURY TRIAL** |
| DISTRICT    ) | |
| d/b/a JPS HEALTH NETWORK    ) | |
| ) | |
| ) | **FILED UNDER SEAL** |
| ) | **PURSUANT TO 31 U.S.C.  §3730** |
| ) | |
| ) | |
| ) | |
| ) | |
| Defendants.    ) | |
| ) | |

## RELATOR, ERMA LEE'S COMPLAINT PURSUANT TO
## 31 U.S.C. 3729, *et seq.* OF THE FEDERAL FALSE CLAIMS ACT

The United States of America, by and through *qui tam* relator Erma Lee ("Ms. Lee" or "Relator"), bring this action under 31 U.S.C. 3729 *et seq.,* as amended, to recover all damages (including treble damages), civil penalties and other remedies established by the False Claims Act ("FCA") on behalf of the United States for violations by the Defendant, Tarrant County Hospital District d/b/a JPS Health Network ("JPS").

This is a civil health care fraud action. JPS knowingly submitted, or caused to be submitted, false or fraudulent claims to federal health care programs; knowingly making or using false statements or records material to false or fraudulent claims paid by the United States; and knowingly concealed or improperly avoided or decreased an obligation to pay or transmit money

or property to the United States.

As a result of the fraudulent conduct set forth herein, JPS knowingly submitted, or caused to be submitted, thousands of false claims, statements or records to Medicare, the Texas Medicaid Agency ("Texas Medicaid"), TRICARE/CHAMPUS Program ("TRICARE") and other government health care benefit programs, and, in turn, received millions of dollars in reimbursements to which they are not entitled.

From at least January 2014 until November 2017, JPS knowingly engaged in an aberrant pattern of submitting false claims on behalf of its physicians by billing across multiple departments for a variety of evaluation/management ("E/M") services with Modifier 25 (separate and distinct E/M service with a non-E/M service performed on the same date)[1], Modifier 59 (distinct or independent service performed on the same day)[2] and Modifier XU (subset of the Modifier 59) in direct violation of the Centers for Medicare and Medicaid Services' ("CMS") policy and its National Correct Coding Initiative ("NCCI"), which limits the billing of products/services that are not normally reported together.

JPS engaged in an up-coding scheme of appending Modifier 25 to other CPT codes in an incorrect manner in relation to documentation not supporting the following: a significant, separately identifiable procedure/service with the evaluation and management patient codes; with incidental procedures not requiring the modifier (i.e., vaccine administration fee); with services other than evaluation and management codes; level of care not supported by documented; duplicate billing; and inappropriate use of additional modifiers that are unnecessarily used on the same CPT

---

[1] Norian, *Modifier 25*, https://med.noridianmedicare.com/web/jeb/topics/modifiers/25 (last visited May 4, 2018).
[2] Centers for Medicare and Medicaid, *Modifier 59 Article*, https://www.cms.gov/Medicare/Coding/NationalCorrectCodInitEd/downloads/modifier59.pdf (last visited May 4, 2018).

code.

JPS engaged in an up-coding scheme of appending Modifier 59 and Modifier XU to other CPT codes in an incorrect manner in relation to documentation not supporting the following: using Modifier 59 inappropriately on code pairs where documentation did not indicate a distinct and separate procedure from one another; unbundled services; and appending Modifier 59 and Modifier XU on the same CPT code. JPS knowingly retained the overpayments made by various government payors.

JPS engaged in a scheme by knowingly and falsely representing to its certifying bodies and the United States that the technical, administrative and physical requirements of the Health Insurance Portability and Accountability Act of 1996 (Pub. L. 104-191 (Aug. 21, 1996)) ("HIPAA") and the Health Information Technology for Economic and Clinical Health Act (Pub. L. 111-5 (Feb. 17, 2009)) ("HITECH Act") were accurate on meaningful use attestation statements, which were required in order to receive government funding under the Meaningful Use Program.

JPS engaged in prohibited retaliation under 31 U.S.C. § 3730(h) when Ms. Lee was discharged, harassed and/or discriminated against in her termination by JPS because of lawful acts done by Ms. Lee over the course of several years, which include, but are not limited to, her involvement in the Modifier 25, Modifier 59 and Modifier XU Audit Reports, for which Ms. Lee brought fraudulent billing violations directly to the attention of the executive team and the board of directors at JPS, the retention of over payments from government payors, as well as raising issues in relation to HIPAA and the HITECH Act.

The Defendant knowingly defrauded the United States Government and took funds away from the citizens of the United States, who contribute to the Medicare Trust Fund, Medicaid, and

TRICARE programs.

## I.   **PRELIMINARY STATEMENT**

1.      This is an action to recover damages and civil penalties on behalf of the United States of America for violations of the False Claims Act, 31 U.S.C. §§ 3729-3733; the Patient Protection and Affordable Care Act of 2010 ("ACA") – 60-day Rule, 81 Fed. Reg. 7653 (Feb. 12, 2016), the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; and the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812, arising from false or fraudulent records, statements, or claims, or any combination thereof, made, used or caused to be made, used, or presented, or any combination thereof, by the Defendants, together with their current and former shareholders; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; and the corporate successors and assigns of any of them, their agents, employees, or co-conspirators, or any combination thereof, with respect to false claims submitted with a Modifier 25, Modifier 59, and Modifier XU to government payers, as well as private insurance payers, who administer plans under Medicare Part C; knowing failure to comply with HIPAA, the HITECH Act and the Omnibus Rule, but expressly attesting to these requirements, which led to the receipt of Meaningful Use dollars from the government; knowingly retained payments from government payors; and retaliated against Ms. Lee for bringing these allegedly unlawful actions to the attention of the JPS executive team and the board of directors.

2.      Originally enacted in 1863 during the Civil War, the False Claims Act was substantially amended by the False Claims Amendments Act of 1986, signed into law on October 17, 1986, and by the Fraud Enforcement and Recovery Act of 2009, signed into law

on May 20, 2009. Congress' intent was to enhance the Government's ability to recover losses sustained as a result of fraud against the United States and to provide a private cause of action for the protection of employees and others who act in furtherance of the purposes of the Act. Congress acted after finding that fraud in federal programs and procurement is pervasive and that the Act, which Congress characterized as the primary tool for combating fraud in government contracting, was in need of modernization.

3.      Based on these provisions, Relators seek to recover damages and civil penalties arising from the Defendant's knowing presentation of false claims for reimbursement utilizing Modifier 25, Modifier 59, Modifier XU; knowing false attestations and submission of false claims for Meaningful Use dollars; knowing retention of overpayments in violation of the "60-day Rule"; and unlawful retaliation against Ms. Lee, who brought these alleged false claims to the attention of JPS' executive team and board of directors.

## II.      <u>PARTIES</u>

4.      Relator Erma Lee is a resident of Fort Worth, Texas whose mailing address is 2300 West 5ᵗʰ Street, Unit 2346, Fort Worth, Texas 76107. Relator alleges that from at least as early as October 2015 through her termination in 2017, Defendant knowingly submitted false statements and claims compelling government programs and private insurers to pay for professional healthcare services that do not reflect the requirements for a Modifier 25 (signifying that a separate evaluation and management service was performed), a Modifier 59 (signifying that two procedures, rather than one, were billable) submission, and/or Modifier XU, knowing that such statements and claims would result in claims for a higher payment submitted to the United States Government, and which constitute false claims under the False Claims Act. Relator also alleges that Defendant knowingly submitted false "meaningful use"

attestations in relation to certain standards to CMS in order to be eligible for payments from the federal government under either the Medicare or Medicaid EHR incentive program, when, in fact, Defendant had not met those standards. Relator alleges that Defendant also knowingly retained overpayments in violation of the 60-day Rule. Relator alleges that Defendant retaliated against and ultimately discharged her for her efforts to stop violations of the False Claims Act.

5.      Defendant Tarrant County Hospital District d/b/a JPS Health Network ("JPS") is a covered entity and healthcare provider that is located in Fort Worth, Texas and has its corporate headquarters located at 1500 South Main Street, Fort Worth, TX 75051. Relator alleges that from at least as early as October 2015 through her termination in 2017, JPS knowingly submitted false statements and claims compelling government programs and private insurers to pay for professional healthcare services that do not reflect the requirements for a Modifier 25 (signifying that a separate evaluation and management service was performed) a Modifier 59 (signifying that two procedures, rather than one, were billable) submission, and/or Modifier XU, knowing that such statements and claims would result in claims for a higher payment submitted to the United States Government, and which constitute false claims under the False Claims Act. Relator also alleges that Defendant knowingly submitted false "meaningful use" attestations in relation to certain standards to CMS in order to be eligible for payments from the federal government under either the Medicare or Medicaid EHR incentive program, when, in fact, Defendant had not met those standards. Relator alleges that Defendant also knowingly retained overpayments in violation of the 60-day Rule. Relator alleges that Defendant retaliated against and ultimately discharged her for her efforts to stop violations of the False Claims Act.

### III.   JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over the subject matter of this action pursuant to both 28 U.S.C. § 1345 in that the Relator brings this action in the name of the United States, and 31 U.S.C. § 3732 which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730. Under 31 U.S.C. §3730(e), there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint.

7.      This Court has supplemental jurisdiction to entertain the common law causes of action under 28 U.S.C. §§ 1345 and 1367(a).

8.      This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because that section of the FCA authorizes nationwide service of process, and the Defendants engage in interstate commerce with private insurers and various government payers, and transact business in this district.  All Defendants have at least minimum contacts with the United States, and transact business in the Western District of Texas.  Specifically, the Western District of Texas is where the various services, claims, and invoices were sent for payment.

9.      Venue is proper in this District pursuant to 31 U.S.C. § 3732(a), and under 28 U.S.C. §§ 1391(b) and 1395(a), because the Defendants transact business in the Western District of Texas.

10.     There have been no public disclosures of the allegations and transactions contained herein that bar jurisdiction under 31 U.S.C. § 3730(e).

11.     Simultaneously with this filing, a copy of the Complaint was served upon the United States and the United States Attorney Office for the Western District of Texas, together

with a written disclosure statement setting forth all material evidence and information Relator possesses, pursuant to the requirements of 31 U.S.C. § 3730(b)(2). *See* FED. R. CIV. P. 4. A disclosure statement has also been sent to the Department of Justice ("DOJ"), and a copy of the initial Complaint was served on the DOJ.

12.     Ms. Lee is the original source because she possesses direct and independent knowledge of the non-public information upon which the allegations herein are based. *See* 31 U.S.C. § 3730(e)(4)(B).

13.     FED. R. CIV. P. 9(b); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009); and *Bell Atlantic Corp. v. Twombly*, 425 F.3d 99 (2007). "Pursuant to *Twombly* and *Iqbal*, a complaint will survive a motion to dismiss only if it contains factual allegations in addition to legal conclusions. Factual allegations that are simply labels and conclusions, and a formulaic recitation of the elements of a cause of action are not sufficient. . . . [C]ourts need not accept the legal conclusions drawn from the facts alleged in a complaint, and they need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Cook v. Howard*, 2012 WL 3634451 (4th Cir. Aug. 24, 2012) (citations and internal quotation marks omitted).

14.     An "original source" is an "individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action ... which is based on the information." 31 U.S.C. § 3730(e)(4)(B). The Fifth Circuit has explained that this provision only applies when "the original-source independent-knowledge requirement is only triggered if the claims are based on information that is publicly disclosed." *U.S. Ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 194 (5th Cir. 2009). The Relator's first-hand knowledge is derived from internal memoranda, first-hand observations, reports, claims submissions data and correspondence, both verbal and written,

with Defendant and other employees that were obtained directly during the course of business in her role as Director of Compliance and Privacy Officer at JPS.

15.     The statements and claims being submitted by the Defendant to both government and private payers are allegedly false.  The direct and independent documentation supplied by Ms. Lee supports the allegations that the Defendant knowingly submitted false claims for payment by the United States Government.  The Relator has voluntarily provided all such information to the Federal Government prior to filing this action.  *See* 31 U.S.C. § 3730(e)(4)(B).

16.     Ms. Lee has complied with all other conditions precedent to bringing this action.

## IV.     FACTUAL ALLEGATIONS

17.     The Defendant has a long history of alleged healthcare fraud in relation to the submission of false claims for reimbursement from both private and government insurers for reimbursement of medical services.  Defendant filed false claims with both private and government insurers; thereby violating the False Claims Act, 31 U.S.C. §3729, *et seq.*[3]  The assertions made by Defendant are material to the payment of the claims.[4]

---

[3] Enacted by Congress as a way to uncover corrupt suppliers of goods to the Union Army, the False Claims Act (FCA), 31 U.S.C. 3729-3733 stems back to 1863.[3]  As the FCA's legislative history illustrates, "[c]laims may be false even though the services are provided as claimed if, for example, the claimant is ineligible to participate in the program."[3]  There are three broad categories of claims: (1) factually false; (2) legally false; and (3) reverse false claim. *Kane v. Healthfirst, Inc., 2015 WL 4619698 (S.D.N.Y. Aug. 3, 2015)*.  A factually false claim is defined as an "incorrect description of goods or services provided or a request for reimbursement for goods or services never provided." *United States ex rel. Mikes v. Straus*, 274 F.3d 687, 697 (2d Cir. 2001).  By way of contrast, legally false claims are predicated on an express or implied false certification of compliance with a regulation, statute or contract term—is more complicated, and has resulted in one of the most controversial debates on the proper scope of FCA liability. *See, In Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. ___ (2016). The claims at issue in the present case should be classified as factually false claims, express legally false claims, and/or reverse false claims.

[4] A multitude of scenarios exist where the United States Government has utilized filing false claims for services that were either improperly coded or rendered by another provider as the basis for a

18.     Defendant is a Medicare Approved Facility, effective February 19, 2009 (Provider No. 1992753222), that submitted millions of dollars of claims utilizing a CMS Form 1500.[5] (Ex. A).

19.     Defendant is a $950 million, tax-supported health care system for Tarrant County in North Texas.[6]

20.     Ms. Lee's tenure with JPS began in 2001.

21.     From 2001through 2004, Ms. Lee was the Privacy and Security Program Manager., where she managed the implementation of and compliance with privacy and security regulations.

22.     From 2004 through her termination in November 2017, Ms. Lee was the Director of Compliance and Privacy Officer at JPS, where she liaised with leadership, reported potentially non-compliant activities, and implemented directives related to both corporate compliance and privacy programs, including HIPAA and the HITECH Act.

---

False Claims Act. In *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370 (5th Cir. 2004), the Relator alleged that the defendant providers "filed false claims with Medicare and the Civil Health and Medical Program of the Uniformed Services (CHAMPUS) for services that were either medically unnecessary or rendered by an unlicensed physician." *Id.* Here, the Fifth Circuit stated that both claims for medically unnecessary treatment and services provided by an unlicensed physician form the basis of a false claim for payment by the government. *Riley*, 355 F.3d at 378. In *Riley*, the complaint alleged that both the hospital and physician defendants "submitted their claims, 'they warranted and represented that the services in such statements were rendered by duly licensed physicians or persons who are otherwise qualified under the various regulations, codes, and standards. Many of the professional services rendered, in part or in whole to those patients, were nevertheless those of Dr. Radovancevic." *Id.* The Fifth Circuit remanded the case back to the U.S. District Court because of the misapplication of Rule 12(b)(6).

[5] Centers for Medicare and Medicaid, *Tarrant County Hospital District d/b/a JPS Health Network,* https://www.cms.gov/Medicare/Medicare-General-Information/MedicareApprovedFacilitie/Carotid-Artery-Stenting-Facilities-Items/Tarrant-County-Hospital-District.html (last visited May 4, 2018).
[6] JPS Health Network, *Linked In Official Page*, https://www.linkedin.com/company/jps-health-network (last visited May 4, 2018).

23.    Ms. Lee participated in numerous compliance audits. And, reported the findings to the executive team, which included Robert Earley, the Chief Executive Officer, as well as members of the Board of Directors.

24.    Between January 2014 and February 2016, Relator's Team conducted Compliance Audits, including: Modifier 25 Billing Compliance Audit (#20160415); and Modifier 59/Modifier XU Billing Compliance Audit (#20160509). (Exs. B, C). The total error rate for all payers was 95%, which is significantly higher than the OIG's findings in their 2005 Report.

25.    Despite the recommendation that a corrective action plan be implemented and that the EHR be configured to "raise a flag" if the coding appeared incorrect, the CEO and other executives turned a blind eye, the EHR flags were ignored, over payments were knowingly retained, and the CEO gave a directive to keep submitting claims as they had been doing with Modifier 25 (and Modifiers 59, XU) to increase revenues.

26.    In 2016, the team completed at least two other audits for Modifier 25 and Modifiers 59/XU, of which the Relator participated, and the results were reported to the Board of Managers.  Ms. Lee indicated that JPS had received over payments from the government and that those payments needed to be returned. Both audits identified overpayments by CMS and when the Relator raised the subject of self-reporting, the Chief Compliance Officer, Chief Executive Officer and others turned a willful "blind-eye."

27.    At various points throughout her employment at JPS, Ms. Lee conducted her own HIPAA/HITECH Act assessment utilizing the U.S. Department of Health and Human Services Office for Civil Rights ("HHS-OCR") risk assessment cross-walk. Ms. Lee identified various material deficiencies in relation to the technical, administrative and physical requirements of the Security Rule.

28.     On or about February 15, 2018, Ms. Lee learned that her own protected health information had been breached at JPS through a letter sent by Defendant indicating that "an individual accessed your medical record on July 20, 2017."

29.     Defendants were out of compliance with multiple aspects of the Rules; yet, falsely attested that the Meaningful Use criteria were met in order to receive millions of dollars from HHS. According to Defendant's financial statements, despite blatant violations of inadequate technical, administrative and physical security measures, as well as substandard clinical decision support interventions, Defendant JPS applied for and received over $13 million in incentive payments/grants from the United States Government through the Medicare and Medicaid Meaningful Use programs.

30.     The law forbids retaliatory discharge based upon an employee's efforts to stop violations of the FCA. 31 U.S.C. § 3730(h). Yet, that is exactly what JPS did over a period of time as the Relator brought potential False Claims Act violations to the Defendant's attention.

31.     The pattern of constructive discharge and harassment continued. There were no team or leadership meetings that the Relator missed intentionally or without a valid reason. Ron Skillens, Chief Compliance Officer, had a bi-weekly professional development meeting that sometimes conflicted with a meeting the Relator had, including one with HHS. When she pointed this out to him, he told her to continue going to the other meetings and he would adjust the professional development meeting.

32.     On or about October 23, 2017, Ms. Lee met with Ron Skillens, Chief Compliance Officer and Chris Lyons, Executive Director for Human Resources. At that time, she was told that she was being terminated and that JPS.

33.     The following week, the Relator received a phone call from the vice-president of human resources informing her that they were conducting a panel review of her case; and, that she needed to be in human resources around 10:30AM. The Relator had previously scheduled to take off that day to do some volunteer work for DFWII, but she did come in.

34.     Relator experienced continued retaliation in the form of her hard-earned retirement plan being incorrect, as well as significant problems in obtaining COBRA insurance.

## V.     CAUSES OF ACTION

35.     The spirit of the FCA is to protect both the government, government contractors and the taxpayers from providers who scheme to profit from the U.S. Government by submitting false statements and claims for payment. Defendant defied public policy by defrauding the Medicare and Medicaid programs, as well as the "Meaningful Use" program; and, in turn, the tax- paying citizens of the United States. U.S. Const. art. I. Therefore, the U.S. Government is entitled to damages for the Defendant's alleged violations of the False Claims Act - because they knowingly submitted attestation statements and claims for healthcare services that were false claims based upon inappropriate services that did not meet the requirements of the Modifiers 25, 59 and XU, as well as the misrepresentations on "meaningful use" attestations that resulted in payments to the Defendant by the United States Government, which the Defendant knowingly retained in violation of the 60-day Rule. Ms. Lee's efforts to curtail these allegedly fraudulent practices by bringing them to the attention of the Chief Executive Officer and other superiors resulted in her termination in violation of 31 U.S.C. § 3037(h).


**Count I**
**(False Claims Act, 31 U.S.C. § 3729(a)(1) (2006))**
**(False Claims Act, 31 U.S.C. §3729(a)(1)(A) (West 2013))**
**Submission of False Claims**

36.     Relator repeats and re-alleges each allegation in each of the preceding paragraphs as if fully set forth herein.

37.     This is a claim for penalties and treble damages under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, as amended.

38.     During the relevant period, Defendant presented numerous claims for payment to the United States Government through Medicare, Medicaid and TRICARE, as well as other government programs.

39.     For the reasons alleged herein, many of these claims were knowingly false and fraudulent within the meaning of the FCA. More specifically, Defendant knowingly presented, and caused to be presented, to an officer and/or employee of the United States Government false and fraudulent claims for payment and approval in violation of 31 U.S.C. § 3729(a)(1)(A).

40.     Defendant had actual knowledge of the falsity of these claims, or deliberately ignored or recklessly disregarded their truth or falsity, within the meaning of the FCA.

41.     The United States suffered damages as a result of false claims by the Defendant and is entitled to recover its losses and otherwise obtain relief available under the FCA.

**COUNT II**
(False Claims Act, 31 U.S.C. § 3729(a)(2) (2006))
(False Claims Act, 31 U.S.C. § 3729(a)(1)(B) (West 2013))
**Use of False Records and Statements**

42. Relator repeats and re-alleges each allegation in each of the preceding paragraphs as if fully set forth herein.

43.     This is a claim for penalties and treble damages under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, as amended.

44.     During the relevant period, Defendant presented numerous claims for payment to the United States Government through Medicare, Medicaid and TRICARE, as well as other government programs.

45.     For the reasons alleged herein, many of these claims were knowingly false and fraudulent within the meaning of the FCA. More specifically, Defendant knowingly presented, and caused to be presented, to an officer and/or employee of the United States Government false and fraudulent claims for payment and approval in violation of 31 U.S.C. § 3729(a)(1)(A).

46.     Defendant had actual knowledge of the falsity of these claims, or deliberately ignored or recklessly disregarded their truth or falsity, within the meaning of the FCA.

47.     The United States suffered damages as a result of false claims by the Defendant and is entitled to recover its losses and otherwise obtain relief available under the FCA.

## COUNT III
(False Claims Act, 31 U.S.C. § 3729(a) (1) (2006))
(False Claims Act, 31 U.S.C. § 3729(a)(1)(G) (West 2013))

48. Relator repeats and re-alleges each allegation in each of the preceding paragraphs as if fully set forth herein.

49.     This is a claim for penalties and treble damages under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, as amended.

50.     During the relevant period, Defendant presented numerous claims for payment to the United States Government through Medicare, Medicaid and TRICARE, as well as other government programs; and, knowingly retained the overpayments in violation of 31 U.S.C. § 3729(a)(1)(G) when Defendant failed to repay the money within 60 days.

51.     For the reasons alleged herein, many of these claims were knowingly false and fraudulent within the meaning of the FCA. More specifically, Defendant knowingly withheld, and caused to be withheld, to an officer and/or employee of the United States Government false and fraudulent claims for which payment and approval had been received in violation of 31 U.S.C. § 3729(a)(1)(G) when Defendant failed to repay the money within 60 days.

52.     Defendant had actual knowledge of the falsity of these claims, or deliberately ignored or recklessly disregarded their truth or falsity, within the meaning of the FCA.

53.     The United States suffered damages as a result of the reverse false claims that were knowingly retained by the Defendant and is entitled to recover its losses and otherwise obtain relief available under the FCA.

(60-day Rule, Affordable Care Act, Section 6402(a); 42 CFR § 401.305)
**Concealing or Avoiding Obligation to Pay**

54. Relator repeats and re-alleges each allegation in each of the preceding paragraphs as if fully set forth herein.

55.     This is a claim for penalties and treble damages under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, as amended.

56.     During the relevant period, Defendant presented numerous claims for payment to the United States Government through Medicare, Medicaid and TRICARE, as well as other government programs.

57.     For the reasons alleged herein, many of these claims were knowingly false and fraudulent within the meaning of the FCA. More specifically, Defendant knowingly withheld, and caused to be withheld, to an officer and/or employee of the United States Government false and fraudulent claims for which payment and approval had been received in violation of

Affordable Care Act, Section 6402(a); 42 CFR § 401.305, when Defendant failed to repay the money within 60 days.

58. Defendant had actual knowledge of the falsity of these claims, or deliberately ignored or recklessly disregarded their truth or falsity, within the meaning of the FCA.

59. The United States suffered damages as a result of false claims by the Defendant and is entitled to recover its losses and otherwise obtain relief available under the FCA.


## COUNT IV
### Unjust Enrichment

60. Relator repeats and re-alleges each allegation in each of the preceding paragraphs as if fully set forth herein.

61. JPS was unjustly enriched, and is liable to account and pay such amounts, which are to be determined at trial, to the United States.


## COUNT V
### (False Claims Act, 31 U.S.C. §3730(h))
### Termination and Retaliation Against Relator

62. The Relator repeats and re-alleges each allegation in each of the preceding paragraphs as if set forth fully herein.

63. Defendant violated the False Claims Act, 31 U.S.C. § 3730(h), by terminating Ms. Lee's employment with JPS due to her refusal to perpetuate Defendant's schemes to submit or cause to be submitted, claims to the federal health care programs that were paid by the United States and the State of Texas in violation of the False Claims Act.

64. In response, JPS singled out Ms. Lee for criticism and disciplinary action, harassed her, and ultimately fired her.

65.     JPS wrongfully retaliated against Ms. Lee for investigating and reporting to JPS non-compliance with Meaningful Use, as well as Defendant knowingly submitted false statements and claims compelling government programs and private insurers to pay for professional healthcare services that do not reflect the requirements for a Modifier  25 (signifying that a separate evaluation and management service was performed), a Modifier 59 (signifying that two procedures, rather than one, were billable) submission, and/or Modifier XU, knowing that such statements and claims would result in claims for a higher payment submitted to the United States Government, and which constitute false claims under the False Claims Act.

## COUNT VI
### Payment Under Mistake of Fact

66.     The Relator repeats and re-alleges each allegation in each of the preceding paragraphs as if set forth fully herein.

67.     This is a claim for the recovery of money paid by the United States to JPS through Medicare Reimbursement, through Texas Medicaid reimbursement, and through TRICARE reimbursement, as a result of mistaken understandings of facts.

68.     The claims that JPS submitted or caused to be submitted to the federal health care programs that were paid by the United States and the State of Texas based upon mistaken or erroneous understandings of material fact caused by JPS.

69.     The United States, directly and through the State of Texas, acting in reasonable reliance on the truthfulness of the claims, and JPS' certifications, attestations and representations, paid JPS certain sums of money to which they were not entitled, and JPS is thus liable to account and pay such amounts, which are to be determined at trial, to the United States.

## VI.    **DAMAGES**

70.    Relators repeat and re-allege each allegation in each of the preceding paragraphs as if fully set forth herein.

71.    The False Claims Act imposes liability on any person who "knowingly presents or causes to be presented a false or fraudulent claim for payment or approval; knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim; conspires to commit a violation of the False Claims Act… or knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." *See* 31 U.S.C. § 3729(a). Prior to 2016, the last increases to the penalties for False Claims Act violations occurred on August 30, 1999 and changed the minimum from $5,000.00 to $5,500.00 and the maximum from $10,000.00 to $11,000.00, plus treble damages. 64 Fed. Reg. 47099, 47104 (Aug. 30, 1999).

72.    On August 1, 2016, the U.S. Department of Justice published Interim Final Rules, which significantly increased penalties under the False Claims Act for the first time in nearly eighteen years. Now, for violations occurring after November 2, 2015, the new minimum and maximum penalties are $10,781.00 to $21,563.00 plus treble damages. 81 Fed. Reg. 42491, 42494 (Jun. 30, 2016).

73.    Here, the Defendant submitted false claims to the government, to the best of Relator's knowledge, before October 2015. These submissions allegedly continue today. The number of false claims submitted is significant.

## VII.    **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment as follows:

A.    That Defendant be ordered to cease and desist from violating 31 U.S.C. §3729 *et seq.*; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; and the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812;

B.    That this Court enter judgment against Defendant in an amount equal to treble (three times) the amount of damages the United States has sustained because of Defendant's actions, plus a civil penalty of not less than $5,500.00 and not more than $11,000.00 for each violation of 31 U.S.C. §3729 prior to November 2, 2015;

C.    That this Court enter judgment against Defendant in an amount equal to treble (three times) the amount of damages the United States has sustained because of Defendant's actions, plus a civil penalty of not less than $10,781.00 and not more than $21,563.00 for each violation of 31 U.S.C. §3729 after November 2, 2015, pursuant to 81 Fed. Reg. 42491, 42494 (Jun. 30, 2016);

D.    That Relator be awarded the maximum amount allowed pursuant to §3730(d) of the False Claims Act;

E.    The Relator and the U.S. Government recover the maximum amount under the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a;

F.    The Relator and the U.S. Government recover the maximum amount under the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812;

G.    That Relator and the U.S. Government be awarded all costs of this action, including attorneys' fees and expenses; and

H.    For such other and further relief as this Court may deem proper.

## VIII.   <u>JURY DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Relator demands a jury trial for all claims and issues so triable.

Dated: May 4, 2018.

Respectfully Submitted,

RACHEL V. ROSE–ATTORNEY AT LAW, PLLC

By: *Rachel V. Rose*

Rachel V. Rose, Esq.
Texas License 24074982
PO Box 22718
Houston, TX 77227
Telephone: (713) 907-7442
Email: rvrose@rvrose.com